**Original filed 4/27/07**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBERT LEE ROBINS, JR.,

         Plaintiff,

 v.

A.A. LAMARQUE, et al.,

         Defendants.

No. C 02-4720 JF (PR)

PARTIAL DISMISSAL
ORDER; ORDER OF
SERVICE

     Plaintiff, proceeding pro se, filed the instant civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed in forma pauperis in a separate written order. The Court initially ordered Plaintiff to file a notice of his current address and whether he wished to continue to pursue the claims set forth in his complaint. Thereafter, Plaintiff filed a notice of intent to prosecute. The Court will review the complaint pursuant to 28 U.S.C. § 1915, dismiss one of Plaintiff's claims and order service of the complaint as to the remaining claims on the named Defendants.

## BACKGROUND

     Plaintiff alleges that Salinas Valley State Prison ("SVSP") prison employees refused to allow him to attend religious services. Plaintiff is a practicing Muslim and was only allowed to attend religious services once between August 1, 2001 and October 14, 2001. Plaintiff contends

that he was denied religious services through April 17, 2002, when he was placed in administrative segregation in retaliation for his filing administrative grievances against the prison. See Complaint at 3-3(B).

On September 21, 2001, the SVSP Facility D yard was placed on lockdown status after a "white on white" inmate incident. All inmate cells were searched after this incident. On October 6, 2001, a retaliatory and discriminatory strip search of only Muslim inmates occurred after the "white on white" inmate incident. Correctional Officers Melendez and Sergeant Traynham stated that they were only strip searching Muslim inmates by order of Lieutenant Wilson and supervising staff, including Warden Lamarque. Plaintiff contends that the strip searches amounted to harassment for the Muslim inmates, who have a mandated right to modesty based upon their Muslim faith. Plaintiff states that no other religious group was subjected to this willful misconduct. See Complaint at 3(B).

On October 11, 2001, a third unreasonable search was conducted on Muslim inmates only. Plaintiff was shackled on his way to and from the prison library, medical appointments, and the showers, solely based on his Muslim faith. After the Facility D yard lookdown status was removed, Plaintiff remained under lockdown and confined with no yard time for over six weeks. Plaintiff contends that Muslim inmates at SVSP were placed on twenty-four hour lockdown status without notice or a hearing, deprived of all liberty interests, rights and privileges, based upon their faith. See Complaint at 3(B)-3(C).

Plaintiff alleges that Defendants violated his First Amendment right to the free exercise of religion, his Fourth Amendment right to freedom from unreasonable searches, his Eighth Amendment right forbidding cruel and unusual punishment, and his Fourteenth Amendment right to due process and equal protection under the law. Plaintiff names Defendants A.A. Lamarque, SVSP Warden; W.J. Wilson, SVSP Correctional Lieutenant; K. Traynham, SVSP Correctional Officer; and M. Melendez, SVSP Correctional Officer in his complaint. Plaintiff seeks compensatory and punitive monetary damages. See Complaint at 2-3, 4.

\\\

\\\

1

**DISCUSSION**

2  A.      Standard of Review

3          Federal courts must engage in a preliminary screening of cases in which prisoners seek

4  redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. §

5  1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims

6  that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek

7  monetary relief from a defendant who is immune from such relief.  Id. at 1915A(b)(1),(2).

8          To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential

9  elements: (1) that a right secured by the Constitution or laws of the United States was violated,

10  and (2) that the alleged deprivation was committed by a person acting under the color of state

11  law.  West v. Atkins, 487 U.S. 42, 48 (1988).  To state a claim a plaintiff must show a specific

12  constitutional or federal guarantee safeguarding the interests that have been invaded.  Paul v.

13  Davis, 424 U.S. 693, 697 (1976).

14  B.      Plaintiff's Claims

15          **1.        Free Exercise of Religion**

16          In order to establish a free exercise violation, a prisoner must show a defendant burdened

17  the practice of his religion, by preventing him from engaging in conduct mandated by his faith,

18  without any justification reasonably related to legitimate penological interests.  See Freeman v.

19  Arpaio, 125 F.3d 732, 736 (9th Cir. 1997).  To reach the level of a constitutional violation, "the

20  interference with one's practice of religion 'must be more than an inconvenience; the burden

21  must be substantial and an interference with a tenet or belief that is central to religious

22  doctrine.'"  Id. at 737 (quoting Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987)).

23          Plaintiff claims that he was prohibited from attending Muslim religious services.  From

24  August 1, 2001 through April 17, 2002, Plaintiff alleges that he was allowed to attend only one

25  religious service.  Liberally construed, this claim states a cognizable claim for the violation of

26  his free exercise of religion.  The Court will order service of this claim on the named Defendants.

27  \\\

28  \\\

1          **2.      Fourth Amendment**

2          There is no legitimate subjective expectation of privacy that a prisoner might have in his

3  prison cell and, accordingly, the Fourth Amendment proscription against unreasonable searches

4  does not apply within the confines of the prison cell.  See Hudson v. Palmer, 468 U.S. 517, 525-

5  26 (1984).  The recognition of privacy rights for prisoners in their individual cells simply cannot

6  be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

7  See id. at 526.  However, this does not mean that a prisoner is without remedy for maliciously

8  motivated searches or calculated harassment unrelated to prison needs.  The Eighth Amendment

9  always stands as a protection against cruel and unusual punishment.  See id. at 528-30.

10         Accordingly, Plaintiff's claim that he was subject to unreasonable cell searches in

11  violation of the Fourth Amendment is not cognizable under § 1983.  The Court will dismiss

12  Plaintiff's Fourth Amendment claim based upon unreasonable cell searches without leave to

13  amend.  The Court will address Plaintiff's claim concerning cell searches and strip searches of

14  Muslim inmates, as set forth below.

15         **3.      Cruel and Unusual Punishment**

16         The treatment a prisoner receives in prison and the conditions under which he is confined

17  are subject to scrutiny under the Eighth Amendment.  See Helling v. McKinney, 509 U.S. 25, 31

18  (1993).  In its prohibition of "cruel and unusual punishment," the Eighth Amendment places

19  restraints on prison officials, who may not, for example, use excessive force against prisoners.

20  See Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  The Amendment also imposes duties on these

21  officials, who must provide all prisoners with the basic necessities of life such as food, clothing,

22  shelter, sanitation, medical care and personal safety.  See Farmer v. Brennan, 511 U.S. 825, 832

23  (1994); DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 199-200 (1989);

24  Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).  A prison official violates the Eighth

25  Amendment when two requirements are met: (1) the deprivation alleged must be, objectively,

26  sufficiently serious, see Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298

27  (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, see id. (citing

28  Wilson, 501 U.S. at 297).

1    Allegations of verbal harassment and abuse fail to state a claim cognizable under 42

2    U.S.C. § 1983.  See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997); Rutledge v. Arizona

3    Bd. of Regents, 660 F.2d 1345, 1353 (9th Cir. 1981), aff'd sub nom. Kush v. Rutledge, 460 U.S.

4    719 (1983).  However, harassment coupled with conduct implicating the Eighth Amendment's

5    proscription against cruel and unusual punishment may indeed present a claim cognizable under

6    § 1983.  See Hudson v. Palmer, 468 U.S. 517, 528-30 (1984) (malicious cell searches and

7    calculated harassment unrelated to prison needs may implicate Eighth Amendment's protection

8    against cruel and unusual punishment).

9    Plaintiff alleges that Defendants strip searched Muslim inmates and subjected only

10    Muslim inmates to two additional cell searches.  Plaintiff states that Correctional Officers

11    Melendez and Sergeant Traynham stated that they were only strip searching Muslim inmates by

12    order of Lieutenant Wilson and supervising staff, including Warden Lamarque.  Plaintiff claims

13    that he was shackled when transported throughout the prison.  Plaintiff maintains that he and

14    other Muslim inmates were detained in lockdown and confined for over six months without any

15    notice or hearing.  Liberally construed, Plaintiff has alleged a cognizable Eighth Amendment

16    claim of cruel and unusual punishment.  The Court will order service of this claim on the named

17    Defendants.

18        **4.    Due Process**

19    Allegations by a prisoner that he was denied due process in connection with the decision

20    to administratively segregate him present a constitutionally cognizable claim if: (1) prison

21    officials are narrowly restricted by state statutes or regulations to impose the specific deprivation

22    at play, for example, an indeterminate term of segregation in the SHU, and (2) the liberty in

23    question is one of "real substance."  Sandin v. Conner, 515 U.S. 472, 477-487 (1995).  A liberty

24    interest of "real substance" generally will be limited to freedom from (1) restraint that imposes

25    "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

26    life," id. at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," id. at

27    487.  The hardship associated with administrative segregation, such as loss of recreational and

28    rehabilitative programs or confinement to one's cell for a lengthy period of time, is not so severe

as to violate the Due Process Clause itself.  See Toussaint v. McCarthy, 801 F.2d 1080, 1091-92

(9th Cir. 1986) (applying Hewitt v. Helms, 459 U.S. 460 (1983)), cert. denied, 481 U.S. 1069

(1987).

California statutes and prison regulations narrowly restrict the power of prison officials to

administratively segregate prisoners.  Toussaint, 801 F.2d at 1098.  In Wilkinson v. Austin, 545

U.S. 209, 223-25 (2005), the Supreme Court held that an inmate's indefinite placement in a

"supermax" facility, where they are not eligible for parole consideration, imposes an "atypical

and significant hardship within the correctional context."  Because indefinite placement in

California's SHU generally renders inmates ineligible for parole consideration, it appears that

California prisoners also have a liberty interest in not being placed indefinitely in the SHU.

Accord id. at 224-25 (necessity of harsh conditions in light of danger that high-risk inmates pose

to prison officials and other inmates does not diminish conclusion that conditions rise to a liberty

interest in their avoidance).

In Toussaint v. McCarthy, the Ninth Circuit held that when prison officials initially

determine whether a prisoner is to be segregated for administrative reasons due process requires

that they comply with the following procedures: (1) they must hold an informal nonadversary

hearing within a reasonable time after the prisoner is segregated,[1] (2) the prisoner must be

informed of the charges against him or the reasons segregation is being considered, and (3) the

prisoner must be allowed to present his views.  See Toussaint, 801 F.2d at 1100.[2] [3]  Due process

does not require detailed written notice of charges, representation by counsel or counsel-

substitute, an opportunity to present witnesses, a written decision describing the reasons for

---

[1]While a hearing held within 72 hours of segregation constitutes a "reasonable time," it is
unsettled whether due process would tolerate a more lengthy delay.  See Toussaint, 801 F.2d at
1100 n.20.

[2]While a prisoner's attendance at an administrative segregation hearing is potentially "more
useful," it is not constitutionally required.  See Hewitt v. Helms, 459 U.S. 460, 476 (1983).

[3]The official charged with deciding to place an inmate in administrative segregation must be
the official to whom the inmate presents his views.  See Toussaint v. McCarthy, 926 F.2d 800,
803 (9th Cir. 1990), cert. denied, 502 U.S. 874 (1991).

1   placing the prisoner in administrative segregation or disclosure of the identity of any person

2   providing information leading to placement of a prisoner in administrative segregation.  See id.

3   at 1100-01.  Accord Wilkinson, 545 U.S. at 228-29 (determining that prisoners are

4   constitutionally entitled only to the informal, non-adversary procedures set forth in Greenholtz v.

5   Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1 (1979), and Hewitt v. Helms, 459

6   U.S. 460 (1983), prior to assignment to "supermax" facility).

7        Plaintiff alleges that he and other Muslim inmates were held for over six months in

8   twenty-four hour confinement without notice or a hearing.  The Muslim inmates were deprived

9   of liberty interests, rights and privileges based on their faith.  Liberally construed, plaintiff has

10   alleged a cognizable due process claim for Defendants' actions in not complying with the

11   procedural protections due based upon Plaintiff's placement and detention in administrative

12   confinement.  The Court will order service of this claim on the named Defendants.

13       **5.**     **Equal Protection**

14        When challenging his treatment with regard to other prisoners, courts have held that in

15   order to present an equal protection claim a prisoner must allege that his treatment is invidiously

16   dissimilar to that received by other inmates.  More v. Farrier, 984 F.2d 269, 271-72 (8th Cir.

17   1993) (absent evidence of invidious discrimination, federal courts should defer to judgment of

18   prison officials); Timm v. Gunter, 917 F.2d 1093, 1099 (8th Cir. 1990) (same).

19        The Equal Protection Clause requires that an inmate who is an adherent of a minority

20   religion be afforded a "reasonable opportunity of pursuing his faith comparable to the

21   opportunity afforded fellow prisoners who adhere to conventional religious precepts," Cruz v.

22   Beto, 405 U.S. 319, 322 (1972) (Buddhist prisoners must be given opportunity to pursue faith

23   comparable to that given Christian prisoners), as long as the inmate's religious needs are

24   balanced against the reasonable penological goals of the prison, O'Lone v. Estate of Shabazz,

25   482 U.S. 342, 349 (1987).  See Allen v. Toombs, 827 F.2d 563, 568-69 (9th Cir. 1987).

26        Plaintiff claims that he was prevented from attending Muslim religious services by SVSP

27   prison officials.  Plaintiff also alleges that he and other Muslim inmates were subject to strip

28   searches, cell searches, shackling, and twenty-four hour confinement.

1    Liberally construed, Plaintiff has alleged a cognizable equal protection claim for Defendants'

2    failure to allow him to attend religious services and for subjecting him to dissimilar treatment in

3    comparison with non-Muslim inmates.  The Court will order service of this claim on the named

4    Defendants.

5                                        **CONCLUSION**

6          1.      The Clerk shall issue a summons and the United States Marshal shall serve,

7    without prepayment of fees, copies of the complaint in this matter (docket no. 1), all attachments

8    thereto, and copies of this order on Defendants A.A. Lamarque, SVSP Warden; W.J. Wilson,

9    SVSP Correctional Lieutenant; K. Traynham, SVSP Correctional Officer; and M. Melendez,

10   SVSP Correctional Officer.  The Clerk shall also serve a copy of this order on Plaintiff.

11         2.      In order to expedite the resolution of this case, the Court orders as follows:

12         a.      No later than **sixty (60) days** from the date of this order, Defendants shall

13   file a motion for summary judgment or other dispositive motion, or shall notify the Court that

14   Defendants are of the opinion that this case cannot be resolved by such a motion.  The motion

15   shall be supported by adequate factual documentation and shall conform in all respects to

16   Federal Rule of Civil Procedure 56.

17         **Defendants are advised that summary judgment cannot be granted, nor qualified**

18   **immunity found, if material facts are in dispute.  If Defendants are of the opinion that this**

19   **case cannot be resolved by summary judgment, they shall so inform the Court prior to the**

20   **date the summary judgment motion is due**.

21         All papers filed with the Court shall be promptly served on Plaintiff.

22         b.      Plaintiff's opposition to the dispositive motion shall be filed with the

23   Court and served on Defendants no later than **thirty (30) days** from the date Defendants' motion

24   is filed.  The Ninth Circuit has held that the following notice should be given to plaintiffs:

25                 The defendants have made a motion for summary  judgment by
                   which they seek to have your case dismissed.  A motion for summary
26                 judgment under Rule 56 of the Federal Rules of Civil Procedure will, if
                   granted, end your case.
27                 Rule 56 tells you what you must do in order to oppose a
                   motion for summary judgment.  Generally, summary judgment
28                 must be granted when there is no genuine issue of material fact--

1
2
3
4
5
6
7
8

that is,  if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted in favor of defendants, your case will be dismissed and there will be no trial.

9   See Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).

10   Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex

11   Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (holding party opposing

12   summary judgment must come forward with evidence showing triable issues of material fact on

13   every essential element of his claim).  Plaintiff is cautioned that failure to file an opposition to

14   Defendants' motion for summary judgment may be deemed to be a consent by Plaintiff to the

15   granting of the motion, and granting of judgment against plaintiff without a trial.  See Ghazali v.

16   Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (per curiam); Brydges v. Lewis, 18 F.3d 651, 653 (9th

17   Cir. 1994).

18   Plaintiff is also advised that a motion to dismiss for failure to exhaust administrative

19   remedies under 42 U.S.C. § 1997e(a) will, if granted, end his case, albeit without prejudice.

20   Plaintiff must "develop a record" and present it in his opposition in order to dispute any "factual

21   record" presented by the defendants in their motion to dismiss.  Wyatt v. Terhune, 315 F.3d

22   1108, 1120 n.14 (9th Cir. 2003).

23   c.    Defendant shall file a reply brief no later than **fifteen (15) days** after

24   Plaintiff's opposition is filed.

25   d.    The motion shall be deemed submitted as of the date the reply brief is due.

26   No hearing will be held on the motion unless the Court so orders at a later date.

27   3.    All communications by the Plaintiff with the Court must be served on Defendants,

28   or Defendants' counsel once counsel has been designated, by mailing a true copy of the

Partial Dismissal Order; Order of Service
P:\pro-se\sj.jf\cr.02\Robins720srv                         9

1  document to Defendants or Defendants' counsel.

2      4.    It is Plaintiff's responsibility to prosecute this case.  Plaintiff must keep the Court

3  and the parties informed of any change of address and must comply with the Court's orders in a

4  timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute

5  pursuant to Federal Rule of Civil Procedure 41(b).

6      5.    Discovery may be taken in accordance with the Federal Rules of Civil Procedure.

7  No further Court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is

8  required before the parties may conduct discovery.

9      IT IS SO ORDERED.

10  DATED:  __4/27/07_____                    _____

11                                              JEREMY FOGEL
                                                United States District Judge

1   A copy of this ruling was mailed to the following:

2

3   Robert Lee Robins, Jr.
    42837 Alep Street
    Lancaster, CA  93536

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28