NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROBERT LEE ROBINS, JR., | ) | No. C 02-4720 JF (PR) |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | ) | |
| A.A. LAMARQUE, et al., | ) | |
| Defendants. | ) | |

   Plaintiff, a California state prisoner proceeding pro se, filed the instant civil rights action under 42 U.S.C. § 1983, alleging that prison officials violated his First, Fourteenth, and Eighth Amendment rights. The Court, after dismissing one claim, found that Plaintiff's remaining allegations stated cognizable claims. Defendants now move for summary judgment on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law on the remaining claims. Plaintiff has filed opposition to the motion and Defendants have filed a reply. Having reviewed the record and the applicable law, the Court concludes that Defendants are entitled to judgment as a matter of law and will GRANT Defendants' motion in its entirety.

\\\

\\\

**BACKGROUND**

Plaintiff's allegations arise from the implementation of a "modified program" and cell and body searches of Plaintiff conducted by the staff at the Salinas Valley State Prison ("SVSP").[1] Plaintiff arrived at SVSP on August 1, 2001, and was classified as a Level IV inmate with a "Close B" custody designation, meaning that he was to remain under direct and constant supervision by staff at all times. Defs.' Mot. Summ. J. ("MSJ") at 5. Plaintiff was housed in "Facility D," which is maximum-security housing for prisoners requiring the highest security custody. Id. In Facility D, even under normal circumstances, only five inmates are allowed to congregate in the yard at any one time. Inmates are not allowed to bring any personal items, including religious objects or equipment, to the exercise yard. Id.

Plaintiff, who is a Muslim, alleges that between August 1, 2001, and October 14, 2001, he was allowed to attend religious group services only once and that this restriction continued until April 17, 2002. Order of Partial Dismissal ("OPD") at 1-2. Defendants concede that, owing to a "variety of violent incidents," and threats of other such incidents, organized religious services for all inmates were restricted in August and September 2001, and from December 21, 2001, through April 10, 2002. MSJ, Decl. of W. Wilson ("Decl. Wilson") ¶ 18.

After an incident in September 2001, Plaintiff's cell was searched as part of an investigation. OPD at 2. On October 5, 2001, after allegedly hearing of a plan by Muslim inmates to attack prison staff members, prison staff allegedly told Muslim inmates that they were being placed on "modified program," during which inmates were restricted to their cells and thus unable to attend group religious services, and, in addition, inmates, including Plaintiff, were placed on "handcuff status" and were shackled on their way to and from the prison library, medical appointments and showers. Decl. Wilson, ¶ 14, Ex. C at 65; Compl. at 3(b)-3(c).

Plaintiff contends that he and the other Muslim inmates in fact were not notified of the implementation of the modified program, nor were they given a hearing, and that they were

---

[1] Defendants interchangeably use the terms "modified program" and "lockdown" to refer to the incident at issue, even though they also state that the terms refer to different prison security programs. MSJ 5-6.

targeted on the basis of their religious beliefs.[2] Pet. at 3. Plaintiff filed an inmate appeal on October 14, 2001, alleging that SVSP staff violated his First, Fourth, and Fourteenth Amendment rights. MSJ, Decl. of C. Young, Ex. G at 16. The record shows that Plaintiff exhausted his administrative appeals. Id. at 16-18, 20-24; Ex. H at 25, 29-30.

## DISCUSSION

**I.  Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its' own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is not the task of the court to

---

[2] The Court dismissed Plaintiff's Fourth Amendment allegation for failure to state a claim for relief, concluding that Plaintiff's allegations of unreasonable searches stated an Eighth Amendment, rather than a Fourth Amendment claim in the prison context. OPD at 4.

scour the record in search of a genuine issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment.  Id.  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp v. Catrett, 477 U.S. at 323.

## II.   Plaintiff's Claims[3]

### A.   Free Exercise of Religion

Plaintiff alleges that SVSP staff violated his First Amendment right to the free exercise of religion by placing him on the modified program, which prevented him from attending group religious services.[4]  Pet. at 3.  "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Shakur v. Schriro, No. 05-16705, 2008 WL 185496, at *2 (9th Cir. Jan. 23, 2008) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).  In Turner, the Supreme Court set forth four factors to be balanced in determining whether a prison regulation is reasonably related to legitimate penological interests:  (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether there are "alternative means of exercising the right that remain open to prison inmates"; (3) whether "accommodation of the asserted constitutional right" will "impact . . . guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives." Turner, 482 U.S. at 89-90 (quoting Block v. Rutherford, 468 U.S. 576, 586 (1984)).

Applying Turner to the instant case, the Court concludes that Plaintiff's free exercise

---

[3] Defendants contend that Plaintiff's claims are not only without merit, but are also barred under the doctrine of qualified immunity.  MSJ at 1, 16-19.  Because the Court concludes that Plaintiff's claims are suitable for dismissal as a matter of law on other grounds, the Court need not reach the issue whether Defendants are entitled to qualified immunity.

[4] Plaintiff also claims in his opposition papers that SVSP staff violated his rights under the "Religious Land Use and Institutionalized Person Act [42 U.S.C. § 2000cc et seq.], pursuant to 42 U.S.C. § 1983."  Pet. at 3.  However, Plaintiff's arguments and evidence relate only to his § 1983 claims.  Accordingly, the Court will address only § 1983 claims.

claims are appropriate for summary judgment. The parties do not dispute that Plaintiff was prevented from attending group religious services and largely confined to his cell. However, Plaintiff has failed to satisfy any of the Turner factors. First, Defendants have presented evidence that their actions were reasonably related to the legitimate penological interest of the safety and security of staff and other prisoners. Defendants received information in October 2001 that Muslim prisoners planned to attack prison staff members. MSJ, Decl. of Wilson, Ex. C at 65. To protect staff and prisoners from possible violence, prison authorities implemented the modified program in the hope that, by restricting group gatherings, such violent plans would be thwarted and disrupted. The searches of Muslim inmates' prison cells yielded two "stabbing type weapons" and "weapon stock." Id. Based on this evidence, which is undisputed, it appears that Defendants' actions were reasonably related to a legitimate penological interest.

Second, it is apparent that Plaintiff had "alternative means by which he [could] practice his religion" and was not "denied all means of religious expression." Shakur, 2008 WL 185496, at *5 (quoting Ward v. Walsh, 1 F.3d 873, 877 (9th Cir.1993)). Defendants have offered evidence undisputed by Plaintiff that even under the modified program, Plaintiff at all times was free to worship in his cell. MSJ at 10.

Third, Defendants have made an adequate showing that because of the possible security threat, an accommodation would have burdened prison staff, entailing heavy guards and an interruption in the effective and orderly running of the prison while an investigation was being undertaken. MSJ at 12. Fourth, Defendants have shown that there were not "ready alternatives to the prison's current policy that would [have] accommodate[d] [Plaintiff] at de minimis cost to the prison. Id. at *6 (quoting Ward, 1 F.3d at 879). The "existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." Turner, 482 U.S. at 90. Here, the record shows that because of heightened and specific security concerns at SVSP, no ready alternatives to a group service were reasonably available during the time period of the modified program.

\\\

\\\

**B.     Eighth Amendment**

Plaintiff next alleges that Defendants strip-searched Muslim inmates, subjected only Muslim inmates to additional cell searches, and shackled Muslim inmates when they were transported throughout the prison, thus violating the Eighth Amendment's prohibition against cruel and unusual punishment. OPD at 5.

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishment," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive force against prisoners. See Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, see Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, see id. (citing Wilson, 501 U.S. at 297).

However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (quoting Price v. Johnston, 334 U.S. 266, 285 (1948)). While basic human needs must be met, when a genuine emergency exists prison officials may be more restrictive than usual and certain services may be temporarily suspended. See Hoptowit v. Ray, 682 F. 2d 1237, 1259 (9th Cir. 1982). Severe conditions of confinement resulting from an emergency lockdown do not amount to an Eighth Amendment violation where the restrictions are tailored to the level of emergency. See Hayward, 629 F.2d at 603 (no due process or Eighth Amendment violation from five-month emergency lockdown where restrictions gradually eased as emergency permitted); see also Bruscino v. Carlson, 854 F.2d 162, 164-66 (7th Cir. 1988) (extraordinary security measures of permanent lockdown such as limitation of time spent outside cells, denial of opportunities to socialize, handcuffing, shackling, spread-eagling and rectal searches reasonable measures in view of history of violence at prison).

1    Under this standard, Plaintiff's Eighth Amendment claims are insufficient as a matter of
law.  Essentially, Plaintiff contends that the searches and restraints constituted a violation of the
Eighth Amendment in and of themselves.  However, in light of the heightened security concerns
at SVSP at the relevant time, the fact that Muslim prisoners were searched for weapons and
shackled does not, without more, constitute an infringement of Plaintiff's constitutional rights.

### C.    Fourteenth Amendment Claims

#### 1.    Due Process

Plaintiff also contends that he and the other Muslim inmates were denied their right to due process when prison staff imposed the modified program without giving prisoners notice or an opportunity for a hearing.  Pet. at 3(c).  However, Defendants have presented evidence demonstrating that the Muslim prisoners in fact were given notice that the modified program would be imposed.  MSJ at 15.

Courts generally have held that lockdowns do not create a liberty interest and thus do not implicate due process.  See Hayward, 629 F.2d at 603 (no due process or Eighth Amendment violation from five-month emergency lockdown where restrictions gradually eased as emergency permitted).  A prison lockdown may be imposed where warranted by a state of emergency.  See id. at 601.  The decision of a prison official to institute a lockdown is accorded great deference. See Pepperling v. Crist, 678 F.2d 787, 789 (9th Cir. 1982).  Where a lockdown is imposed, the conduct of the prisoners is not at issue; the question is whether the degree of emergency justifies a continuation of the lockdown.  See Hayward, 629 F.2d at 601.  Where the lockdown is in response to a genuine emergency and is not used as punishment, procedural due process is not required.  See id. 602; see also Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (lockdown not punishment where all inmates confined to cells; hearing not required); Pepperling, 678 F.2d at 789 (no due process violation where forty-eight hour lockdown not disciplinary and instituted in order to maintain security within cell block); accord Rust v. Grammar, 858 F.2d 411, 413 (8th Cir. 1988) (where lockdown used as security measure prison regulations for discipline not applicable).  Nor does California's administrative regulation authorizing lockdowns create a protected liberty interest entitling prisoners to a hearing before a lockdown may be imposed or

continued.  See Hayward, 629 F.2d at 602; cf. Johnson, 948 F.2d at 519 (because confinement to prison cell does not violate recognized liberty interest no hearing necessary before imposing cell lockdown).

Notwithstanding the fact that Plaintiff disputes that he and the other Muslim inmates received notice of the modified program, Plaintiff's due process claim fails as a matter of law.  In light of the undisputed evidence concerning threats of violence by Muslim inmates, there is no genuine issue of material fact as to whether the inmates had a liberty interest that triggered a right to notice.  Moreover, it is clear that Plaintiff knew that the modified program had been initiated, as shown by the fact that he filed an administrative grievance on October 14, 2001, only nine days after the modified program was put in place.  Prison officials responded to the grievance in November 2001 and interviewed Plaintiff after he appealed to the Second Level of Review.  Prison staff also responded to Plaintiff's separate appeal as a member of a group of inmates who filed a grievance in October 2001.

To the extent that Plaintiff alleges that the imposition of the modified program constituted an unconstitutional instance of administrative segregation, his claim also fails.  Such claims are appropriate when a prisoner has been removed from the general population and then placed in separate housing.  Plaintiff does not challenge his initial placement, but rather the subsequent, and temporary, imposition of the modified program.[5]

### 2.  Equal Protection

Finally, Plaintiff contends that he and other Muslim inmates were targeted for unfair and unconstitutional treatment because of their faith. Pet. at 3, 3(c).  An inmate who is an adherent of a minority religion must be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to the conventional

---

[5] Plaintiff contends that he was placed on administrative segregation after October 11, 2001, after the facility D2 yard "came off lock down status." Pet. at 3(b).  However, he also states that he was housed in the D5 building and that he was placed in administrative segregation on or about April 17, 2002. Id.  The Court will not address this claim because Plaintiff fails to present a coherent factual basis for it.  Plaintiff also fails to distinguish this claim from his other claims concerning the effects of the modified program, which lasted until April 2002 and included at least one of the periods during which he allegedly was placed in administrative segregation.

religious precepts." Cruz v. Beto, 405 U.S. 319, 322 (1972) (per curiam) (Buddhist prisoners must be given opportunity to pursue faith comparable to that given Christian prisoners). However, the inmate's religious needs must be balanced against the reasonable penological goals of the prison. O'Lone, 482 U.S. at 349.

The parties do not dispute the fact that Muslim prisoners were restricted from group religious services during the period in question here. Applying the balancing test set forth in O'Lone, the Court concludes that prison staff, having received threats of violence by Muslim prisoners, reasonably imposed the modified program in order to prevent violence and to allow staff to investigate the threats. Plaintiff does not dispute that such threats were received. Because maintaining the security of staff and fellow prisoners is a reasonable penological interest, Plaintiff's equal protections claims lack evidentiary support. As noted above, Plaintiff and the other Muslim prisoners at all times were free to worship in their cells.

## CONCLUSION

The Court concludes that Plaintiff has failed to raise a genuine issue of material fact as to any constitutional violation and that Defendants are entitled to judgment as a matter of law. Accordingly, Defendants' motion for summary judgment is GRANTED as to all remaining claims in favor of all Defendants. The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED:  3/14/08

JEREMY FOGEL
United States District Judge